**GULF REFINING CO. v. NABERS et al.**

No. 5092.

Court of Civil Appeals of Texas. Amarillo.

Dec. 11, 1939.

. John Deaver and Sam J. Hamilton, both of Memphis, David W. Stephens and P. O. Settle, both of Fort Worth, and John E. Green, Jr., of Houston, for appellant.

J. O. Fitzjarrald, of Memphis, R. H. Templeton, of Wellington, and J. V. Wheat and Carl Runge, both of Houston, for appellees.

JACKSON, Chief Justice.

On May 25, 1936 the appellee, W. L. Nabers, et al., instituted this suit in the District Court of Hall County against the appellant to recover $4,000 damages alleged to have been caused to the land and crop of appellee by the negligence of appellant, the Gulf Refining Company, in permitting oil to escape from its pipe line on June 2, 1934 and be carried by the flood waters of Oakes Creek to appellee's property.

On October 4, 1938 W. L. Nabers filed his fourth amended original petition in which he claimed ownership of the land and crops he asserts were damaged and destroyed, alleged that appellant was a corporation engaged in the transportation of crude oil by pipe lines, one of which crossed Oakes Creek about seven or eight miles north of his property over which the water of said creek flows; that on the night of June 2, 1934 Oakes Creek overflowed, appellant's pipe line was broken and great quantities of oil escaped therefrom and accompanied the overflow of water down the creek to and upon appellee's land, remained there until 110 acres thereof were saturated and soaked with crude oil and the fertility of the land destroyed; that the land imme-

844

diately preceding the overflow was of the reasonable market value of $16,000; that the oil overflow killed seventy-five growing trees and decreased the market value of his land to less than $15,000, which resulted in damages to him in the sum of $1,000.

The plaintiff then pleaded the loss of certain crops for 1934, 1935, 1936 and 1937 which he asserts was all caused by the oil which overflowed to and upon his land on June 2, 1934. The petition also contains these allegations: "Plaintiffs would further show to the court that while it was apparent immediately after the flooding of his land in June, 1934 that it might be impossible to grow crops on said lands for several years thereafter, it was impossible to determine the full extent of the damage to the crops of any year until the end of each succeeding crop year and that plaintiff's cause of action for damages for the loss or partial loss of crops for each successive year could not be determined until the end of each year; and that the cause of action for the crops damaged for the year 1935 did not accrue until the last month and last day of said year; that the cause of action for crop damages for the year 1936 did not accrue until the last month and last day of that year, and that the crop damages for the year 1937 did not accrue until the last month and last day of that year."

The Federal Land Bank of Houston held a lien against the appellee's land, was made a party, and filed a cross-action in the suit against appellant but later voluntarily dismissed its suit and no further consideration is given to such cross-action.

The appellant answered by demurrers, general denial, alleged that the damages, if any, to plaintiff's land and crops were caused by excessive rains and flood waters on Oakes Creek which constituted an act of God; it also pleaded the two years' statute of limitation.

In response to special issues, the jury, in effect, found that the damage was not due to an act of God; that 110 acres of appellee's land was overflowed with oil on May 23, 1934; that appellant was guilty of negligence in the construction and maintenance of its pipe line and such negligence was the proximate cause of the oil overflow and the damage to plaintiff's land and crops; that the land had a market value prior to the oil overflow; that the oil overflow killed seventy-five trees on the land which depreciated its market value $75.

The jury found crop damages for the year 1934 aggregating $510 and for the year 1935 aggregating $415. On these findings judgment was rendered for appellee for $1,000, and this action of the court is before us for review.

The appellant challenges as error, because immaterial and not warranted by the pleadings, the action of the court in submitting to the jury special issue No. 11, which is as follows: "How long after the overflow do you find from a preponderance of the evidence could plaintiff in the exercise of ordinary care have determined the extent of damages to his trees. Answer length of time. Answer: Thirty days."

■ There is no allegation in appellee's petition to the effect that he was unable to determine that his trees had been damaged promptly after the overflow occurred. He alleged that it was apparent immediately thereafter that the flooding of the land might make it impossible to grow crops for several years and sets out the dates when he was able to determine the full extent of his damages to the crops. In view of the failure of the petition to contain any allegation authorizing the submission of this issue to the jury the submission thereof was error; however, were the pleadings sufficient to authorize the submission of such issue it was immaterial. It will be noted that neither accident, fraud nor mistake are alleged and the law is settled that when an injury is inflicted by reason of the invasion of another's rights the statute of limitation begins to run from the date of such invasion.

In Houston Water-Works Co. v. Kennedy, 70 Tex. 233, 8 S.W. 36, 37, Chief Justice Stayton says: "The arch was cut on July 24, 1884, and this action was not brought until September 21, 1887, but it was brought within two years after the settling of the corner of the house and cracking of the walls. The cutting of the arch and placing of the water-pipe was done at the request of a tenant of the appellee, and was at a place not open to view and was unknown to appellee until inquiry was made as to the cause of injury to the walls. It is urged that the cause of action accrued at the time the arch was cut, and that the plea of limitation presented a good defense. * * * If it be true that the cause of action accrued at the time the arch was cut, then the action was barred. The action was one that would be barred in two years after the cause of action accrued, and the

inquiry is, when did the cause of action accrue? The arch and house alleged to have been injured were the property of the appellee at the time the arch was cut. This was an act wrongful towards the owner of the property, for which an action might have been maintained as soon as the tort was committed. * * * The appellee's action is based on the act of the agent of the appellant through which the property of the former is alleged and proved to have been injured in July, 1884. For the injury then done to the arch the appellee could have maintained an action at once, and, having failed to do so for a period longer than two years, his action is barred."

See also American Indemnity Co. v. Ernst & Ernst, Tex.Civ.App., 106 S.W.2d 763.

■ The fact that appellee was unable to ascertain with certainty the amount of his damages would not suspend the operation of the statute of limitation. Collins et al. v. Griffith, Tex.Civ.App., 125 S.W.2d 419.

■ It has been announced in numerous decisions that an action for damages for permanent injuries to real estate is barred by the two years' statute. Tietze v. International & G. N. R. Co., 35 Tex.Civ.App. 136, 80 S.W. 124; Nix v. Ellis County et al., Tex.Civ.App., 93 S.W.2d 212.

■ The appellee filed his first original petition in this case on May 25, 1936. He filed his fourth amended original petition October 4, 1938. He alleged in each that the overflow which resulted in his damage occurred June 2, 1934 but the jury found on sufficient testimony that the overflow causing the damage occurred May 23, 1934, which was more than two years before the institution of the suit. There is no claim or contention that there were any oil overflows subsequent to May 23, 1934 causing damage.

In Morton Salt Co. v. Lybrand, Tex. Civ.App., 292 S.W. 264, the court says: "Our courts have uniformly held, in cases where it is shown that, by overflow, fire, or other agency, the roots or sod of native or other perennial grasses, fruit or other trees, grape or berry vines, or the productivity of the soil are impaired or destroyed, that the injury is permanent in nature, for which the owner is entitled to recover, as damages, the difference in the market value of the land before and after the injury."

■ In 28 Tex. Jur. para. 66, pages 150, 151, the author says: "Generally speaking, limitation runs upon a cause of action for damages resulting from the seepage, percolation, discharge or pollution of water from the time of the infliction of the injury complained of; and a similar rule prevails as to a cause of action for discharging oil upon another's land." This text is sustained by the holdings in Cosden Oil Co. v. Sides et al., Tex.Civ.App., 35 S. W.2d 815 and Abilene & S. R. Co. v. Herman, Tex.Civ.App., 47 S.W.2d 915.

In Powers v. Schubert, Tex.Civ.App., 220 S.W. 120, 121, the court holds: "A cause of action for negligence or misappropriation by an agent accrues at the time of the wrongful act, and the statute commences to run at that time, and not from the time of ascertaining the damages. Wood on Limitations (4th Ed.) §§ 123 and 200; Meechem on Agency, § 1346; Boyd v. Beebe, 64 W.Va. 216, 61 S.E. 304, 17 L.R. A.,N.S., 660, and note; Fortune v. English, 226 Ill. 262, 80 N.E. 781, 12 L.R.A.,N.S., 1005, and note, 117 Am.St.Rep. 253, 9 Ann. Cas. 77."

■ Under this record and the findings of the jury the appellant was entitled to a judgment on his motion non obstante veredicto.

The judgment is reversed and here rendered in favor of the appellant.